## In re Anonymous No. 10 D.B. 76

Disciplinary Board Docket no. 10 D.B. 76.

## REPORT OF HEARING COMMITTEE

April 15, 1977—Hearing Committee [    ], being [    ], Esq., Chairman, [    ], Esq., and [    ], Esq., file the following report with regard to the foregoing matter.

### I. HISTORY OF THE CASE

Respondent is an attorney admitted to practice law in the Commonwealth of Pennsylvania and his office is located at [    ], Pennsylvania. The petition for discipline in these proceedings was served upon respondent on April 13, 1976. The matter was referred to hearing committee [    ] on May 7, 1976. An answer to petition for discipline was filed on behalf of respondent on May 25, 1976.

On January 21, 1977, a stipulation and admission were filed by counsel for petitioner and respondent. A hearing was held by the hearing committee on February 2, 1977, at the offices of the Disciplinary Board in [    ], Pennsylvania. Present at the hearing were respondent and his counsel, [A], Esq. and [    ], Esq., assistant disciplinary counsel. Also present at the hearing was [    ], Esq.

On February 8, 1977, an additional stipulation was filed on behalf of petitioner and respondent. On February 25, 1977, the notes of testimony of the hearing were forwarded by assistant disciplinary counsel to the chairman of the hearing committee.

## II. FINDINGS OF FACT

1. In 1965, [B], (hereinafter [B]), represented by [C] (hereinafter [C]), filed an action in the former's firm name, [D] Inc. against a factor, [E] Inc., for malicious interference by the latter in an existing contract between [D] and [F] Inc.

2. This case was first filed in the Court of Common Pleas, [ ] County, but was removed to the United States District Court for the [ ] District of Pennsylvania in October of 1965.

3. [B] went to respondent's office for the first time on September 5, 1969, and discussed his case for three hours, but respondent did not then agree to take the case.

4. [B] believed that [C] was still his attorney and, indeed, no petition for withdrawal was entered by [C].

5. Neither [B] nor respondent knew that the matter was scheduled for trial on November 12, 1969.

6. [C] appeared on November 12, 1969, before Judge [G] and informed the Judge that he had been discharged as counsel by [B], and that plaintiff was not ready to proceed with the trial.

7. On November 12, 1969, Judge [G] of the District Court entered judgment against [B] for failure to prosecute.

8. Respondent received the files from [C] on November 15, 1969 and entered his appearance on that date.

9. [B] engaged respondent for the purpose of petitioning the court for reinstatement of the [E] case.

10. Respondent prepared a petition to reinstate the action and place it on the trial list; this was filed in the United States District Court on December 14, 1969.

11. Defendants filed an answering affidavit on February 4, 1970.

12. [B] and respondent filed affidavits on March 3, 1970.

13. The final docket entry in the case of [D] v. [E] occurred on March 3, 1970, when said affidavits were filed.

14. Respondent took no further action on this matter after March 3, 1970.

15. Respondent advised [B] that it was necessary to meet with Judge [G] in order to reinstate the [E] case.

16. Although on several occasions between 1970 and 1973, respondent advised [B] to be prepared at a specific time and date for a meeting with Judge [G], no such meeting ever occurred.

17. By letter dated August 24, 1973, respondent informed [B] that he was still awaiting notification from Judge [G] on a meeting date to discuss the reopening of this case.

18. Prior to the institution of the [D] v. [E] case, a suit between [D] and [F], Inc. was litigated in 1966 in the Common Pleas Court of [    ] with a judgment entered for [F] and against [D] on December 6, 1966. This suit involved the interpretation of a 1963 contract between the parties.

19. As a result of subsequent financial difficulties, [D] filed for reorganization in 1967 under Chapter XI of the Bankruptcy Act.

20. The Chapter XI reorganization failed and [D] went through a bankruptcy proceeding which was concluded in 1969.

21. [B] engaged respondent in September of 1969 to reopen the bankruptcy action of [D].

22. Respondent informed [B] that he was corresponding with the then Chairman of the Commission on Bankruptcy Laws of the United States, Harold Marsh, Jr., to look into [B's] allegations.

23. A letter to Harold Marsh, Jr. from respondent

dated November 13, 1972, and a purported reply from the Commission dated November 27, 1972, were shown to [B] by respondent.

24. [F] entered into a five-year contract with [D] in 1960 to supply goods on consignment.

25. In 1962, [F] began to use a factor [E] to whom they assigned their accounts receivable.

26. [E] insisted upon immediate payment for goods shipped to [B] and refused delivery under other terms.

27. [B] refused to pay; delivery of goods ceased and [D] lost sales.

28. In 1963, [   ], Esq., (hereinafter [H]) represented [D] in its business dealings with [F].

29. As a result of the problems among [F],[D] and [E], [H] and [I], attorney for [F], negotiated a new agreement between [F] and [D] in 1963.

30. In 1966, [D] sued [F] over the interpretation of the 1963 contract; [B] was represented by [C].

31. Judgment was entered for [F] and against [D] on December 6, 1966.

32. [B] engaged respondent in September of 1969 to file a malpractice action against [H] due to his alleged mishandling of the [F] negotiations and the fact that the contract that resulted from the negotiations was alleged to be prejudicial to [B].

33. Respondent filed suit against [H] on September 21, 1970. ([   ] Common Pleas of [   ] County, September term 1970.)

34. On October 9, 1970, defendant filed preliminary objections, and on November 9, 1970, these objections were sustained.

35. The court granted plaintiff 20 days in which to file an amended complaint.

36. Respondent failed to file an amended complaint.

37. As a result of respondent's failure to file an

amended complaint, full judgment was entered against [B] on December 17, 1970.

38. On August 24, 1973, respondent informed [B] by letter that his case against [H] would be called to trial soon unless defendant chose to take depositions or engage in further discovery.

39. In fact, judgment had been entered for defendant three years earlier.

40. Respondent was also retained by [B] in November 1969 to file an action in malpractice against [C], [B's] former attorney.

41. [C] had been the attorney in the [D] v. [E] case, which was dismissed for lack of prosecution on November 13, 1969.

42. On September 21, 1970, respondent filed a malpractice action against [C] for his failure to act upon the [E] case.

43. On October 1, 1970, defendant, [C], demanded a jury trial, and on November 23, 1970, defendant filed an answer to the complaint.

44. Respondent took no further action on behalf of [B] in this case and on June 6, 1974, the case was dismissed for failure to prosecute, after publication.

45. By letter dated August 24, 1973, respondent advised [B] that the [B] v. [C] case was presently in suit and that it would be called for trial in several months.

46. In fact, respondent had taken no action on the case for three years.

47. During the early months that respondent represented [D], [B] called respondent at least three times a week to describe his complaints about various parties, and respondent encountered substantial difficulty in comprehending all of [B's] theories and complaints.

48. Respondent tried to help [B] because

respondent pitied [B] as an old gentleman who sincerely believed he had been wronged, but respondent did not expect to be paid any fee and, in fact, was paid no fee by [B] except for $25 that respondent received for preparing wills.

49. Respondent filed the action against [C] without a clear conviction as to the merits of the action, but because he felt some proceedings should be instituted before all rights of [B] were barred by the applicable statute of limitations.

50. Respondent honestly believed that upon filing of affidavits by the parties, Judge [G] would make decisions on whether or not to open the judgment in favor of [E] that was entered in the Federal action.

51. In the suit of [B] against [H], preliminary objections to the complaint were sustained, respondent explained the matter to [B] and requested additional information and evidence in order to file an amended complaint, but [B] failed to supply the necessary factual information for an amended complaint and, therefore, no amended complaint could reasonably be prepared and filed.

52. Although respondent filed a suit for [B] against [C] and although respondent had many conferences with [B] on this matter, respondent did not develop any facts that he felt clearly justified the suit against [C].

53. Respondent pitied [B] and felt that [B] "wanted his whole life rectified," but that the law could not accomplish [B's] objective.

54. Respondent finally told [B] that he could no longer represent [B], and [B] picked up his files from respondent sometime between November 1972 and April 1973.

55. The letter of August 24, 1973, from respondent to [B] (Exhibit P-9) was as respondent described

it "the heighth of stupidity" and was supplied for submission to [B's] new counsel at a time when respondent no longer had the [B] files, but respondent could give no satisfactory explanation for this mistake.

## III. DISCUSSION

The petition for discipline covers four separate charges all of them arising out of respondent's representation of [B] and for the purpose of this discussion, the four charges, although considered separately, have been combined in this analysis.

The hearing committee is of the opinion that respondent was guilty of some serious mistakes in his handling of the matters covered in these proceedings. Many of the mistakes may be explained at least to some degree by respondent's inexperience in the practice of law. Respondent foolishly allowed his sympathy for the elderly and somewhat confused [B] to dictate respondent's participation in these cases.

This committee has serious doubts as to whether a more experienced attorney could have accomplished [B's] objectives in the litigation in question and at the late date that respondent came upon the scene. There is also an equity in that respondent served [B] without a fee. This, however, is not a justification for respondent's negligence since counsel has the duty to do his very best for any client regardless of the question of remuneration.

The letter of August 24, 1974 (Exhibit P-9) is an excellent example of respondent's carelessness in this matter. This committee has also taken into consideration the stipulation of February 8, 1977, which includes both the letter from respondent's attorneys and the record of the action taken by the

Disciplinary Board in prior proceedings brought to 34 D.B. 73. It is of some significance, however, that this prior matter was contemporary with this case as to the period of time during which the events occurred. It is also believed that respondent seriously prejudiced his position in this matter by failing to document by letters to [B] much of the advice and information that respondent states he communicated orally to [B].

It is the finding of this committee that respondent has violated the following disciplinary rules of the code of professional responsibility:

A. D.R. 6-101(A)(3)—Dealing with neglect of a legal matter entrusted to the attorney;

B. D.R. 7-101(A)(2)—Dealing with failing to carry out a contract of employment.

## IV. RECOMMENDATION

Your hearing committee recommends that respondent be given a private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania (Rules of Disciplinary Enforcement, Rule 17-4(d); now Rule 204).

## PRIVATE REPRIMAND

UNKOVIC, *Chairman,* July 29, 1977 — "As you previously have been notified, the Disciplinary Board on May 13, 1977, determined that the petition for discipline filed against you, docketed at 10 D.B. 76, should be concluded by private reprimand. You were subsequently notified by certified mail, under date of June 29, 1977, to appear at this meeting of the board, for the purpose of receiving the private reprimand.

"The record indicates that you have been

found guilty of transgressing Disciplinary Rule 6-101(A)(3)—(dealing with neglect of a legal matter entrusted) and Disciplinary Rule 7-101(A)(2)—(dealing with failing to carry out contract of employment).

"It is fortunate for you that the hearing committee recommended and the board approved only the imposition of a private reprimand and not a form of public discipline.

"As Chairman of the Disciplinary Board, it is my duty to reprimand you for your misconduct. We urge that you conform to the Code of Professional Responsibility in your future activities. Any subsequent transgressions on your part can only result in further discipline and perhaps more drastic sanctions. We sincerely hope that you will comport yourself in such a manner that future disciplinary action will be unnecessary."